# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **PATRICIA G. ALSTON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09CV00078 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Jason A. Mullins and Lewey K. Lee, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Chantal Jenkins, Assistant Regional Counsel, Eric P. Kressman, Regional Chief Counsel, Region III, and Stephen M. Ball, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner of Social Security (the "Commissioner") and remand for further proceedings consistent with this Opinion.

I

The plaintiff, Patricia Alston, filed this action challenging the Commissioner's decision to deny her claim for disability insurance benefits under Title II of the Social

Security Act ("Act"), 42 U.S.C.A. §§ 401-34 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Alston protectively filed a claim for benefits on July 17, 2006, alleging that her disability began September 13, 2005. Her claim was denied initially and upon reconsideration. On September 23, 2008, an administrative law judge ("ALJ") held a hearing at Alston's request in which both Alston, represented by counsel, and a vocational expert ("VE") testified. The ALJ rejected Alston's claim on October 27, 2008. The Commissioner's decision became final when the Social Security Administration's Appeals Council denied Alston's request for review on October 30, 2009. Thereafter, Alston filed her Complaint with this court, objecting to the Commissioner's final decision. The parties have filed cross-motions for summary judgment and have fully briefed and orally argued the issues. The case is now ripe for decision.[1]

Alston was fifty-five years old at the time of the ALJ's decision, a person of advanced age under the regulations. *See* 20 C.F.R. § 404.1563(e) (2010). Alston graduated from high school and completed a six-month vocational computer course. Before the alleged onset of her disability, Alston worked as an accounts payable

---

[1] During oral argument, Alston's counsel sought to raise new arguments not set forth in Alston's brief. That practice is not acceptable because it does not give opposing counsel a fair opportunity to respond.

clerk, a sedentary, skilled position. Alston claims she is no longer able to work because of a combination of impairments including fibromyalgia, arthritis, and depression. She provided medical records to the ALJ to substantiate her claim. After reviewing the evidence, the ALJ found that Alston suffered from mood and sleep disorders, fibromyalgia-type pain, and arthritis in the back, which are severe impairments. The ALJ determined that none of these impairments, either alone or in combination, qualify as any of the agency's listed disabilities.

The ALJ concluded that Alston had the residual functional capacity to perform light-exertion work that requires no repetitive pushing, pulling, lifting, or carrying and no complex tasks or instructions and can be performed by an individual who has a mild-to-moderate limitation in her ability to tolerate stress; a mild limitation in her ability to sustain attendance, maintain pace, and complete a normal work day; and a serious limitation in her ability to perform simple tasks, interact with the public, and respond to changes in the work environment. The VE testified that someone with Alston's residual functional capacity and past education and skills would be able to perform the duties of a registration clerk, a receptionist, and an electrotype servicer. According to the VE there are 1,600 registration clerk jobs available regionally, 70,000 nationally; 14,000 receptionist jobs available regionally, 556,000 nationally;

and 2,300 electrotype servicer jobs available regionally, 96,000 nationally. Therefore, the ALJ concluded that Alston was not disabled.

Alston argues the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I agree.

II

The plaintiff bears the burden of proving that she is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2010). If it is determined at any

point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *See id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2010); *see also Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985). If the claimant can perform work that exists in significant numbers in the national economy, then she does not have a disability. *See* 20 C.F.R. § 404.1566(b) (2010).

This court must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

A

Alston claims that the ALJ erred by failing to give full consideration to the findings of licensed clinical social worker Susan Myers. Specifically, Alston alleges that the ALJ ignored Myers's determinations of the severity of Alston's mental impairments and the resulting affects on Alston's ability to work. I find that the ALJ gave appropriate consideration to Myers's findings.

Myers treated Alston from January to April 2008. In an assessment of Alston's work-related mental abilities, Myers rated Alston as having marked difficulties understanding, remembering, and carrying out simple instructions; making simple work-related decisions; interacting with the public; and responding appropriately to usual work situations and to changes in a routine work setting. Myers rated Alston as having only moderate difficulties interacting appropriately with supervisors or co-workers. Myers cited Alston's panic disorder and major depression as the cause of these limitations.

The ALJ discounted Myers's findings because they were "inconsistent with the clinical findings recorded and opinion rendered by the consultant psychologist in April 2007" and were "relatively innocuous." (R. at 15.) However, the ALJ did not completely ignore Myers's conclusions. In fact, the ALJ "accord[ed] significant weight" to Myers's assessment by assuming Alston had serious limitations in, but was

not precluded from, performing simple tasks, interacting with the public, and responding to changes in the work environment. (R. at 15.)

Alston argues, however, that the ALJ misinterpreted Myers's assessment and that the "marked" difficulties would translate to a greater deficit than merely "seriously limited." This argument has no merit because the instructions for the assessment form noted that checking the box "marked" for an activity was an indication that "[t]here is a *serious limitation* in this area. There is a substantial loss in the ability to effectively function, resulting in <u>unsatisfactory</u> work performance." (R. at 481 (first emphasis added).) A "marked" limitation is less severe than an "extreme" limitation. An "extreme" limitation is found when "[t]here is [a] major limitation in this area. There is <u>no</u> useful ability to function in this area." (R. at 481.) Thus, the ALJ did give Myers's assessment significant weight by finding that Alston had serious limitations in certain functional areas, allowing her to perform only a minimal amount of those types of activities, but was not so limited as to have "<u>no</u> useful ability to function in [those] area[s]."

B

Alston also argues that the decision must be rejected because the ALJ failed to give credit to Alston's testimony and properly assess the effect pain has on Alston's residual functional capacity. I disagree. "Because [the ALJ] ha[s] the opportunity to

observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning" the credibility of the claimant's testimony regarding her pain are entitled to "great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Objective evidence of a medical condition which could reasonably be expected to produce the pain or other symptoms alleged is required, but objective evidence of the pain the claimant feels is not. *Craig*, 76 F.3d at 594-95. However, claimant's pain allegations "need not be accepted to the extent they are inconsistent with the available evidence." *See id.* at 595.

Alston testified that she cannot sit, stand, or lay down for very long or lift anything "very heavy" because of pain caused by arthritis and fibromyalgia. (R. at 27.) Alston claims that her testimony is supported by substantial evidence, but the proper evidentiary test is whether substantial evidence supports the ALJ's conclusions, not Alston's assertions. The ALJ determined that Alston's ailments could not reasonably cause all of her alleged limitations, but he did partially credit her complaints:

> [Alston] alleges inability to lift more than minimal weight or sit or stand more than brief periods without changing postural position, but the record does not support the degree of limitations she claims. [Alston] has been found to have arthritis and fibromyalgia, but objective clinical findings are essentially limited to muscle tenderness and vague sensory deficit in the lower extremities. MRI, EMG, and nerve conduction studies are unremarkable, and the treating physician has indicated that

musculoskeletal impairments can be managed with medication and follow-up at six-month intervals. Although the reviewing physicians at the initial and reconsideration levels found that [Alston] retains the residual functional capacity to perform the full range of work at the medium level of exertion, the undersigned finds that musculoskeletal impairment can reasonably be expected to produce pain and physical limitations that would restrict [Alston] to lifting and carrying 10 pounds on a frequent basis and 20 pounds on an occasional basis. However, there is no evidence that would support disturbing the conclusion of the reviewing physicians at the initial and reconsideration levels that [Alston] is able to sit, stand, or walk for 6 hours in an 8-hour period. According appropriate weight to [Alston's] subjective complaints, capacity for work at the light level of exertion is reduced by inability to perform jobs that require repetitive pushing, pulling, lifting, or carrying.

(R. at 15 (citations omitted).) There is ample evidence to support this conclusion.

For one, all objective medical evidence showed Alston's back condition was mild. An MRI of Alston's spine conducted on July 21, 2005, showed arthritis but no sign of stenosis or neural impingement, while one conducted on October 29, 2008 showed only mild stenosis. (R. at 353-54, 615.) Neither the fibromyalgia or back impairment impeded Alston's mobility. Examination of her neck, shoulders, elbows, hands, knees, and feet revealed normal range of motion in December 2006. (R. at 361-62.) Although on February 5, 2007, Alston was found to have a limited ability to bend at the side, she had "full functional mobility with normal strength in the [lower extremities]." (R. at 370.) Other objective findings failed to substantiate that Alston's impairments could cause the alleged disabling symptoms. Neurologist

Edward M. Leaton, M.D., found that the results of a nerve conduction study and EMG revealed only "mild findings . . . of uncertain significance" and advised that Alston continue with physical therapy and return in six months. (R. at 374-75.) Examining physician Sebastian Abadie, M.D., found that Alston had some pain in her lumbar spine which showed some muscle tenderness but otherwise there were "no significant radiculopathic symptoms of pain, normal range of motion, and normal strength." (R. at 393.) Every physician that examined Alston found that the straight leg raising test was negative. (*See, e.g.*, R. at 345, 347, 370, 382, 389, 615.)

Furthermore, requiring Alston to stand or walk would not aggravate Alston's pain — in fact, physical exercise was highly recommended as treatment. Dr. Leaton "strongly advised [Alston] get regular exercise which [he] regard[ed] as essential in treating fibromyalgia. . . . [He] strongly suggested she start walking and doing water aerobics." (R. at 383.) Alston's treating physician Carlton E. Miller, M.D., noted that Alston "does exercise and walking" and advised her "to strength[en] and exercise." (R. at 291.) On April 18, 2007, after several sessions of physical therapy, Alston reported to her physical therapist that "overall she [wa]s significantly better;" she was "not experiencing any abnormal neurological symptoms in the lower extremities;" though she continued to experience some pain, "the intensity ha[d] significantly decreased and the pain d[id] not last as long;" "she [wa]s walking

better;" and "she w[ould] continue exercising at home." (R. at 395.) The physical therapist examined Alston after treatment and determined that she had regained much of her ability to bend at the side. (*See id.*)

Six months later, however, Alston contradicted her statements to the physical therapist when she informed Dr. Leaton that she had stopped physical therapy because it "did not help." (R. at 460.) Additionally, Alston's testimony that she could not now cook or clean contradicted Dr. Abadie's report that Alston was able to perform all her activities of daily living "with no problem." (R. at 391.) These contradictions damage Alston's overall credibility and support the ALJ's decision to not give full credence to her testimony.

As evidence of her complaints of pain, Alston cites the findings of Stephen P. Long, M.D., E. Forrest Jessee, Jr., M.D., F.A.C.R., John Marshall, M.D., Christopher R. Morris, M.D., and physician's assistant Laraine R. Bowen. However, their findings actually undermine the notion that Alston's fibromyalgia and back problems could reasonably cause her purported pain and limitations. Treating physician Dr. Long attributed Alston's pain more to her psychological condition than to fibromyalgia and declined to treat it with narcotic analgesics; he instead opined that seeking treatment for depression would be more beneficial. (R. at 236.) Similarly, treating physician Dr. Jessee wrote, "I have asked [Alston] to seek [her primary

physician's] counsel as to treating her depression as I believe that is playing a role in her fibromyalgia." (R. at 346.)

The ALJ did not consider the opinions of Dr. Marshall, Dr. Morris, and Bowen, because Alston submitted these records after the ALJ rendered his decision. The Appeals Council did review these additional medical records, however, so this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). The analysis of the additional evidence is limited to the narrow question of whether the new evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (internal quotation marks and citation omitted).

I find that these new records do not undercut the plethora of evidence that supports the ALJ's conclusion as to the limitations caused by Alston's pain. The most remarkable findings came from Bowen who found that Alston could not walk, stand, or sit for more than fifteen minutes each day because of pain. However, Bowen's conclusions were not based on any new medical diagnoses. Therefore, her assessment does not challenge the ALJ's main finding that there was no

musculoskeletal impairment that could reasonably be expected to produce the pain and physical limitations Alston alleged. Accordingly, substantial evidence supported the ALJ's findings regarding Alston's limitations caused by pain.

C

Alston also complains that the ALJ erred by determining that a significant number of jobs exist in the economy that Alston can perform. Specifically, Alston claims that all the positions that the VE testified would be appropriate for Alston require that she interact directly with the public and thus do not actually fit her residual functional capacity. I agree.

The burden is on the Commissioner "to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record" and the VE must know "what the claimant's abilities and limitations were." *Id.* at 50-51.

Even though the ALJ informed the VE of Alston's public-interaction limitation, the VE clearly did not take it into consideration. The three positions which the VE testified that Alston was capable of performing were a registration clerk (No.

205.367-042 in the Dictionary of Occupational Titles (the "DOT")), a receptionist (No. 237.367-038 in the DOT), and an electrotype servicer (No. 659.462-010 in the DOT). Although the ALJ found that Alston had significant limitations in dealing with the public, these three positions all require significant interaction with the public.

> A registration clerk is used in government services and
>
> [i]nterviews persons to compile information for legal or other records: Records answers to personal history queries, such as date of birth . . . . May record number of applicants registered. May fingerprint registrants . . . . May take affidavits concerning registrants' statement.

1 Emp't & Training Admin., U.S. Dep't of Labor, *Dictionary of Occupational Titles* 175 (4th ed., rev. 1991). A receptionist, inter alia, "receives callers at establishment, determines nature of business, and directs callers to destination . . . . May issue visitor's pass . . . . May make future appointments and answer inquiries." *Id.* at 207. An electrotype servicer

> [r]eviews incoming orders for completeness of customer's instructions and discusses order with customer: Contacts customer by phone or visit to obtain instructions or make suggestions for production of duplicate printing plates. Discusses variations in materials supplied, problems, and delays that arise during production.

2 *id.* at 604.

The Commissioner claims that despite these descriptions, these positions are each rated at a 6 on the DOT's 0 to 8 scale of complexity of required people skills, where 0 is the most complex and 8 is the most simple, and thus they are not positions that require significant interaction with people. The Commissioner is correct that the three positions are coded as a 6 on the DOT's people-skill-scale (as indicated by the fifth digit of their DOT-assigned number), which means the positions require "Speaking-Signaling: Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." 2 *id.* at 1006. However, the assigned number on the scale has limited value: "As each of the relationships to People [i.e., numbers on the scale] represents a wide range of complexity resulting in considerable overlap among occupations, the arrangement [of the scale] is somewhat arbitrary and can be considered a hierarchy only in the most general sense." 2 *id.* at 1005. Furthermore, the scale only measures complexity of the required people skills and not other factors such as frequency that one must use those skills or importance of those skills to the position. Thus, the rating of 6 does not necessarily support a conclusion that someone with a seriously limited ability to interact with the public could perform these jobs.

Consequently, neither the VE's testimony or DOT descriptions are sufficient evidence to show that Alston could perform a job that exists in significant numbers

in the economy. Accordingly, this case is remanded to the ALJ for the limited purpose of determining the jobs that exist in significant numbers, if any, that Alston is capable of performing, given all the factors in her residual functional capacity, including her seriously limited ability to interact with the public.

III

For the foregoing reasons, both parties' motions for summary judgment will be denied, and the final decision of the Commissioner will be vacated and the case remanded for further proceedings consistent with this Opinion. An appropriate final judgment will be entered.

DATED: September 21, 2010

 /S/ JAMES P. JONES
United States District Judge